**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. PIERCE DIVISION**

**CASE NO. 2:22-CV-14358**

| | |
|---|---|
| LEE ZONONI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY,<br><br>        Defendant. | CLASS ACTION |

**DEFENDANT CHW GROUP INC.'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Yaniv Adar*_____
 Josh A. Migdal, Esq.
 Florida Bar No. 19136
 josh@markmigdal.com
 Yaniv Adar, Esq.
 Florida Bar No. 63804
 yaniv@markmigdal.com
 eservice@markmigdal.com

*Attorneys for Defendant CHW Group, Inc.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................1

II.   RELEVANT LEGAL BACKGROUND.........................................................3

    A.    The "Do-Not-Call" Provisions of the Telephone Consumer Protection Act ...........3

    B.    The "Automated" Call Provisions of the Florida Telephone Solicitation Act .........3

III.  APPLICABLE LEGAL STANDARDS OF REVIEW.........................................3

IV.   ARGUMENT....................................................................................................4

    A.    Counts I, III and VII Must Be Dismissed Under Rule 12(b)(6) Because
Plaintiff Fails to Plead Facts Supporting the Essential Elements of His
TCPA Claims ...........................................................................................4

    B.    Count II Should Be Dismissed Under Rule 12(b)(6) Because Section 8(a) of
the FTSA Is Facially Unconstitutional for Several Reasons ...................................9

        1.    Section 8(a) Violates the Dormant Commerce Clause................................9

        2.    Section 8(a) is Also Unconstitutionally Vague For Several Reasons .........11

        3.    Section 8(a) Is Also An Unconstitutional Free Speech Restriction ...........12

    C.    Count II Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff
Fails to State a Plausible Claim For Relief Under Section 8(a) of the FTSA .........18

    D.    Counts III through VII Should Also Be Dismissed Under Rule 12(b)(1) for
Lack of Subject Matter Jurisdiction Due Plaintiff's Lack of Article III
Standing...................................................................................................20

V.    CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Bankers Ins. Grp. v. U.S.*,
  408 F.3d 1328 (11th Cir. 2005) ..................................................................................... 7

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
  131 S.Ct. 2806 (2011) .................................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 4, 9, 18

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S.Ct. 2335 (2020) ............................................................................................ 12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................... 4

*Bobo v. TVA.*,
  855 F.3d 1294 (11th Cir. 2017) ................................................................................... 18

*Bonavista Condo. Ass'n, Inc. v. Bystrom*,
  520 So. 2d 84 (Fla. 3d DCA 1988) .............................................................................. 11

*Booth v. Appstack, Inc.*,
  2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ......................................................... 10

*Borges v. SmileDirectClub, LLC*,
  2022 WL 4269564 (S.D. Fla. Sept. 15, 2022) .............................................................. 17

*Braver v. NorthStar Alarm Serv., LLC*,
  2019 WL 3208651 (W.D. Okla. July 16, 2019) .............................................................. 7

*Burdge v. Ass'n Health Care Mgmt. Inc.*,
  2011 WL 379159 (S.D. Ohio Feb. 2, 2011) ................................................................... 7

*Cahaly v. Larosa*,
  796 F.3d 399 (4th Cir. 2015) ....................................................................................... 14

*Camunas v. Nat'l Republican Senatorial Comm.*,
  2021 WL 2144671 (E.D. Pa. May 26, 2021) ................................................................ 19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980) ..................................................................................................... 16

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) ........................................................................... 4, 18, 19

*Charvat v. DFS Servs. LLC*,
  781 F. Supp. 2d 588 (S.D. Ohio 2011) .......................................................................... 8

*Charvat v. GVN Michigan, Inc.*,
  561 F.3d 623 (6th Cir. 2009) ......................................................................................... 8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Charvat v. NMP*,
    656 F.3d 440 (6th Cir. 2011) ................................................................7

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010)........................................................................14

*Cone Corp. v. Fla. Dep't of Transp.*,
    921 F.2d 1190 (11th Cir. 1991) ............................................4, 9, 20

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ........................................................20

*Cunningham v. Caribbean Cruise Lines, Inc.*,
    2016 WL 7494871 (S.D. Fla. Dec. 29, 2016) ................................5

*Cunningham v. McDonald*,
    2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL
    6198417 (Nov. 28, 2018) ................................................................5

*Cunningham v. Politi*,
    2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*, 2019 WL
    2524737 (June 19, 2019) ................................................................5

*Cunningham v. Rapid Capital Funding, LLC/RCF*,
    2017 WL 3574451(M.D. Tenn. July 27, 2017), *report and rec. adopted*, 2017 WL
    3776165 (Aug. 31, 2017) ................................................................5

*Davila v. Delta Air Lines, Inc.*,
    326 F.3d 1183 (11th Cir. 2003) ........................................................4

*Davis v. Coast Dental Servs., LLC*,
    2022 WL 4217141 (M.D. Fla. Sept. 13, 2022) ......................1, 2, 18, 19

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982)........................................................................9

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ....................................................4, 20

*Evans v. Ocwen Loan Servicing, LLC*,
    2021 WL 7366534 (S.D. Fla. Oct. 21, 2021)................................19

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)........................................................................11

*FF Cosms. FL, Inc. v. City of Miami Beach*,
    866 F.3d 1290 (11th Cir. 2017) ..................................................16, 17

*Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*,
    703 F.3d 1230 (11th Cir. 2012) ........................................................9

*Frisby v. Shultz*,
    487 U.S. 474 (1988)........................................................................15

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Garry v. NewRez, LLC*,
   2022 WL 1619592 (M.D. Fla. Mar. 7, 2022)................................................................19

*GeorgiaCarry.Org, Inc. v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012) ......................................................................................4

*Gresham v. Rutledge*,
   198 F. Supp. 3d 965 (E.D. Ark. 2016) ...........................................................................14

*Grieben v. Fashion Nova, Inc.*,
   2022 WL 4598649 (S.D. Fla. Sept. 29, 2022)................................................1, 2, 19, 20

*Harris v. Mex. Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009) ......................................................................................4

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989)..........................................................................................9, 10, 17

*Hicks v. Alarm.com*,
   2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ...............................................................5, 6

*In re Rules and Regs. Implementing the TCPA*,
   18 F.C.C. Rcd. 14014 (2003) ..........................................................................................7

*Int'l Outdoor, Inc. v. City of Troy*,
   974 F.3d 690 (6th Cir. 2020) ...................................................................................14, 18

*Johnson v. U.S.*,
   576 U.S. 591 (2015)........................................................................................................11

*Laccinole v. Appriss, Inc.*,
   453 F. Supp. 3d 499 (D.R.I. 2020) ..................................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................................................4

*Mantha v. QuoteWizard.com, LLC*,
   2022 WL 325722 (D. Mass. Feb. 3, 2022) .....................................................................6

*Martinolich v. Golden Leaf Mgmt., Inc.*,
   786 So.2d 613 (Fla. 3d DCA 2001).................................................................................18

*Mesa v. Am. Express Educ. Assurance Co.*,
   2017 WL 2212147 (S.D. Fla. May 18, 2017) .................................................................18

*Michael W. Kincaid DDS, Inc. v. Synchrony Fin.*,
   2017 WL 2599224 (S.D. Ohio June 15, 2017) ...............................................................20

*Morgan v. U.S. Xpress, Inc.*,
   2018 WL 3580775 (W.D. Va. July 25, 2018)...............................................................5, 6

*N. Brevard Cnty. Hosp. Dist. v. Metrus Energy-Atlantis*,
   2020 WL 10459467 (M.D. Fla. July 10, 2020)...............................................................20

## TABLE OF AUTHORITIES
(continued)

Page

*Nece v. Quicken Loans, Inc.*,
2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) ........................................................... 8, 9

*Norwegian Cruise Line Holdings, Ltd. v. Rivkees*,
553 F. Supp. 3d 1143 (S.D. Fla. 2021) ................................................................. 14, 18

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ............................................................................................... 4

*Padilla v. Whetstone Partners, LLC*,
2014 WL 3418490 (S.D. Fla. 2014) ....................................................................... 18

*Pariseau v. Built USA, LLC*,
2022 WL 3139243 (M.D. Fla. Aug. 5, 2022) .......................................................... 17

*Perrong v. MLA Int'l, Inc.*,
2021 WL 3036462 (M.D. Fla. July 2, 2021) ........................................................... 19

*Perrong v. S. Bay Energy Corp.*,
2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) ........................................................ 2, 20

*Police Dept. of Chicago v. Mosley*,
408 U.S. 92 (1972) ............................................................................................... 12

*Re Tech Sys., Inc. v. Barbour*,
866 F. Supp. 2d 571 (S.D. Miss. 2011), *aff'd sub nom.* 702 F.3d 232 (5th Cir. 2012) ............. 10

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) ................................................................................. 12, 13, 14, 15

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
2022 WL 2713278 (N.D. Iowa June 9, 2022) ......................................................... 6, 7

*Schaevitz v. Braman Hyundai, Inc.*,
437 F. Supp. 3d 1237 (S.D. Fla. 2019) .................................................................. 20

*Silberman v. Miami Dade Transit*,
927 F.3d 1123 (11th Cir. 2019) ............................................................................ 20

*Smith* v. *Vision Solar LLC*,
2020 WL 5632653 (Sept. 21, 2020) ....................................................................... 5

*SpoofCard, LLC v. Burgum*,
499 F. Supp. 3d 647 (D.N.D. 2020) ....................................................................... 10

*TelTech Sys., Inc. v. McCollum*,
2009 WL 10626585 (S.D. Fla. July 16, 2009) .................................................... 9, 10, 11

*Tomelleri v. Natale*,
2020 WL 5887151 (S.D. Fla. July 16, 2020) ........................................................... 4

*Turizo v. Jiffy Lube Int'l, Inc.*,
2019 WL 4737696 (S.D. Fla. Sept. 27, 2019) ......................................................... 18

## TABLE OF AUTHORITIES
(continued)

**Page**

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
    2022 WL 2919260 (S.D. Fla. May 18, 2022) ....................................................17, 18

*United States v. Davis*,
    139 S. Ct. 2319 (2019) ...................................................................................... 11

*Victory Processing, LLC v. Fox*,
    937 F.3d 1218 (9th Cir. 2019) ......................................................................14, 15

*Wilson v. PH Phase One Operations L.P.*,
    422 F. Supp. 3d 971 (D. Md. 2019)....................................................................7

*Worsham v. Travel Options, Inc.*,
    2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F.App'x 165 (4th Cir. 2017) ..................7

## STATUTES

815 ILCS 305/5(a) .............................................................................................. 12

28 U.S.C. § 1367(c)............................................................................................. 19

47 U.S.C. § 227 ............................................................................................passim

Fla. Stat. § 501.059............................................................................................passim

Fla. Stat. § 501.059(8)(a)-(b) (2018) ................................................................ 12

N.Y. Gen. Bus. Law § 399-p(a)......................................................................... 12

Wash. Rev. Code § 80.36.400(1)(a) .................................................................. 12

## OTHER AUTHORITIES

47 C.F.R. § 64.1200 .....................................................................................passim

Florida Senate Bill 1120.......................................................................................3

Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 ........................11, 12, 15

U.S. Const. art. I, § 8, cl. 3 ..........................................................................passim

U.S. Const. art. III ........................................................................................passim

Fourteenth Amendment to the U.S. Constitution ..........................................11, 12

First Amendment to the U.S. Constitution ..............................................2, 12, 13

Fifth Amendment to the U.S. Constitution..................................................2, 11

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................passim

Fed. R. Civ. 12(b)(1) ................................................................................1, 2, 4, 20

I.     **INTRODUCTION**

In his putative class action Complaint (*see* Dkt. 1), Plaintiff Lee Zononi ("Plaintiff") alleges, in a conclusory fashion and without sufficient requisite factual support, that CHW Group, Inc. d/b/a Choice Home Warranty ("CHW") violated the federal Telephone Consumer Protection Act ("TCPA") and its Florida analog, the Florida Telephone Solicitation Act ("FTSA"). Taking a "kitchen sink" approach, Plaintiff attempts to—but ultimately fails to plausibly—allege ***seven*** different claims against CHW,[1] each based on three text messages purportedly notifying him that his "Choice Home Warranty [was] Expiring Soon" and containing CHW's toll free number. Dkt. 1, ¶ 13. But merely regurgitating the legal elements of a cause of action without supporting facts, like Plaintiff did here, does not satisfy federal pleadings standards and cannot survive dismissal under the Federal Rules in this, or any, case.

Indeed, federal courts—including in the Eleventh Circuit—have routinely dismissed conclusory and speculative TCPA and FTSA complaints, like Plaintiff's here, at the pleadings stage under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief and/or under Fed. R. Civ. 12(b)(1) for lack of subject matter jurisdiction due to the plaintiff's lack of Article III standing.[2] Moreover, beyond its lack of supporting facts, Plaintiff's FTSA claim in Count II also suffers from an incurable flaw. That is, Section 8(a) of the FTSA[3]—containing new, ill-defined restrictions specific only to automated "telephonic sales calls" by businesses regarding "consumer goods and services"—is ***facially unconstitutional*** on several levels, each warranting Count II's dismissal under Rule 12(b)(6). Thus, the Complaint should be dismissed, in its entirety and with prejudice, for several reasons:

<u>**First**</u>, Plaintiff's claims in Counts I, III and VII, seeking relief under Section 227(c) of the TCPA, should be dismissed under Rule 12(b)(6) because, *inter alia*: (i) Plaintiff does not allege any actual facts, beyond his naked conclusions, supporting a plausible inference that he is a "residential telephone subscriber" within the meaning of the TCPA entitled to bring such claims; (ii) he does not allege that he himself registered the subject phone number upon which he allegedly received the at-issue text messages on the National DNC Registry; (iii) assuming *arguendo* a private cause of action

---

[1] In particular, the Complaint asserts three substantive causes of action seeking relief under the TCPA's various "Do-Not-Call" ("DNC") provisions in Counts I, III and VII, and one under the recently-amended "automated" calling restrictions of the FTSA (*i.e.*, Fla. Stat. § 501.059(8)(a)) in Count II. And although it is not a standalone cause of action and instead merely a remedy, Counts IV through VI seek "injunctive relief" with respect to the same deficiently alleged TCPA and FTSA violations.

[2] *See, e.g., Davis v. Coast Dental Servs., LLC,* 2022 WL 4217141, at *2 (M.D. Fla. Sept. 13, 2022); *Grieben v. Fashion Nova, Inc.,* 2022 WL 4598649, at *3-5 (S.D. Fla. Sept. 29, 2022).

[3] Hereafter, "Section 8(a)" unless otherwise specified.

1

for violating the TCPA's "internal" DNC regulations even exists, which is disputed, Plaintiff's allegations regarding CHW's lack of an "internal" DNC policy are wholly conclusory and ultimately do not support such a claim; and (iv) his novel "Seller Identification" (or "failure-to-identify") claim is belied by his own allegations, as CHW <u>was</u> clearly and sufficiently identified in the subject texts.

**Second**, Count II should be dismissed under Rule 12(b)(6) for the threshold reason that Section 8(a) is facially unconstitutional. Specifically, Section 8(a) violates: (1) the dormant Commerce Clause of the U.S. Constitution because it has the practical effect of regulating commerce occurring wholly outside of Florida; (2) the due process clause of the Fifth Amendment to the U.S. Constitution and Florida's equivalent protections because it is unconstitutionally vague in several ways; and/or (3) the First Amendment to the U.S. Constitution and Florida's coextensive speech protections because it represents an unconstitutional content-based speech restriction that cannot survive strict scrutiny (or intermediate scrutiny) review. Any one of these incurable defects is fatal to Count II.

**Third**, beyond its multiple unconstitutional infirmities, Count II should also be dismissed under Rule 12(b)(6) for failing to meet basic federal pleading standards, as Plaintiff does not plead any actual facts supporting an inference that a FTSA-prohibited "automated system" was used to send the at-issue text messages. Courts evaluating claims under the TCPA's analogous automated calling provisions have routinely dismissed such deficient complaints at the pleadings stage under Rule 12(b)(6). And though there is little applicable case law on the requirements for sufficiently pleading a claim under Section 8(a) of the FTSA given the recent amendments and newly-enacted private cause of action, courts ruling on such claims have reached the same conclusion. *See, e.g., Davis*, *supra*.

**Fourth**, Plaintiff's failure to allege that he asked to be placed on CHW's "internal" DNC list further supports dismissal of Counts III and VII under Rule 12(b)(1) for lack of Article III standing, as Judge Bloom recently held in a case involving a starkly-similar complaint filed by the same counsel. *See Grieben*, 2022 WL 4598649, at *3-5. That is because Section 64.1200(d) of the TCPA's implementing regulations applies only to individuals who have ***directed*** a company not to call them.[4]

**Finally**, Counts IV through VI should be dismissed, not only because Plaintiff's substantive claims above fail, but also because Plaintiff must allege plausible facts suggesting a possible threat of ***future*** injury to have standing under Article III to seek injunctive relief in ***any*** federal case. Plaintiff pleads no such facts here. Moreover, "injunctive relief" is a remedy, not a standalone cause of action.

---

[4] *See also Perrong v. S. Bay Energy Corp.,* 2021 WL 1387506, at *3 (E.D. Pa. Apr. 13, 2021).

## II.     RELEVANT LEGAL BACKGROUND

### A.     The "Do-Not-Call" Provisions of the Telephone Consumer Protection Act

In Counts I, III and VII of the Complaint (*see* ¶¶ 53-59, 69-74, and 98-103), Plaintiff seeks relief under the TCPA's DNC provisions and implementing regulations, which in pertinent part: (a) prohibit physically "initiat[ing]" more than one "telephone solicitation" call or text "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (Count I); and (b) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's" DNC request within a "reasonable time" and have internal DNC policies and procedures in place meeting certain minimum standards (Counts III and VII). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d).

### B.     The "Automated" Call Provisions of the Florida Telephone Solicitation Act

In Count II of the Complaint (*see* ¶¶ 60-68), Plaintiff seeks relief under Section 8(a) of the FTSA, which was recently amended and has since spawned a new cottage industry of FTSA class actions being filed in this State by opportunistic plaintiffs. In particular, on June 28, 2021, Florida Senate Bill 1120, which amended the FTSA to add various new requirements relating to the use of an "automated system" to make "telephonic sales calls" to consumers, including certain written consent requirements and a private right of action, was presented to the Governor, who signed it into law on June 29, 2021. On July 1, 2021, those amendments took effect, providing in pertinent part as follows:

> (8)(a) A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers… without the prior express written consent of the called party.

> (10)(a) A called party who is aggrieved by a violation of this section may bring an action to: 1. Enjoin such violation. 2. Recover actual damages or $500, whichever is greater.

> (b) If the court finds that the defendant willfully or knowingly violated this section …, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a).

Fla. Stat. § 501.059. "Telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a ***consumer*** for the purpose of soliciting a sale of any ***consumer goods or services***, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." *Id*. § (1)(j) (emphasis added). But critically, the statute does <u>not</u> define the phrase "an automated system for the selection or dialing of telephone numbers," among other key omissions.

## III.     APPLICABLE LEGAL STANDARDS OF REVIEW

Rule 12(b)(6) provides for dismissal where a plaintiff fails to plead a claim for relief. A

"formulaic recitation of the elements" fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "bare assertion" and "conclusory allegation[s]" also will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element of his [] claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012) ("if allegations are indeed more conclusory than factual, then the court does not have to assume their truth"). Where a law upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is appropriate. *See, e.g., Harris v. Mex. Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009).

A complaint may also be dismissed under Rule 12(b)(1) for a lack of subject matter jurisdiction where the plaintiff lacks Article III standing. *See Elend v. Basham,* 471 F.3d 1199, 1205, 1208 (11th Cir. 2006). To show Article III standing, Plaintiff must plausibly allege: (i) he suffered a concrete "injury in fact," (ii) there is a causal connection between his injury and the conduct complained of (*a.k.a.*, "traceability"), and (iii) his injury must be capable of being redressed by a favorable decision (*a.k.a.*, "redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As the party invoking federal jurisdiction, Plaintiff "bears the burden of establishing these elements." *Id.* at 561.

Additionally, to have Article III standing to seek injunctive relief in any federal case, Plaintiff must allege plausible facts establishing "continuing, present adverse effects" traceable to CHW's conduct. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). In other words, a plaintiff seeking "injunctive relief ... must demonstrate that he is likely to suffer ***future injury*** ... at the hands of the defendant" and "the relief the plaintiff seeks will likely prevent such injury from occurring." *Cone Corp. v. Fla. Dep't of Transp*., 921 F.2d 1190, 1203–04 (11th Cir. 1991) (emphasis added). Like under Rule 12(b)(6), conclusory allegations are insufficient and need not be accepted as true by this Court under Rule 12(b)(1), either. *See Tomelleri v. Natale*, 2020 WL 5887151, at *2 (S.D. Fla. July 16, 2020).

## IV.   ARGUMENT

### A.   <u>Counts I, III and VII Must Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Facts Supporting the Essential Elements of His TCPA Claims.</u>

To begin, Plaintiff's purported TCPA DNC claims in Counts I, III and VII fail to satisfy federal pleadings standards, and thus they should be dismissed under Rule 12(b)(6), for several reasons:

<u>**First**</u>, for Count I, TCPA's National DNC Registry provision and related implementing regulations, on their face, apply <u>only</u> to "***residential*** telephone subscribers." *See* 47 U.S.C. § 227(c)(5);

47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2517085, at \*4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*, 2019 WL 2524737 (June 19, 2019) (dismissing under Rule 12(b)(6), noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Likewise, for Counts III and VII, courts that have recognized a private cause of action for violations of the "internal" DNC procedural requirements in the TCPA's implementing regulations (*i.e.*, 47 C.F.R. § 64.1200(d)) have ruled similarly—*i.e.,* that they apply only to "residential" numbers, not all. *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at \*3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) (dismissing on this basis).

Moreover, federal district courts—including in this District—have widely recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory ***facts*** showing that the subject phone number (*i.e.*, the number at which the plaintiff received the alleged calls or texts) is ***actually used*** for "residential" purposes, or will face dismissal under Rule 12(b)(6). *See, e.g., Cunningham v. Caribbean Cruise Lines, Inc.,* 2016 WL 7494871, at \*2 (S.D. Fla. Dec. 29, 2016) (dismissing DNC claim which failed to sufficiently allege residential use of cell phone). *See also Hicks v. Alarm.com*, 2020 WL 9261758, at \*5 (E.D. Va. Aug. 6, 2020); *Smith* v. *Vision Solar LLC,* 2020 WL 5632653, at \*3 (Sept. 21, 2020); *Politi,* 2019 WL 2517085, at \*4; *Cunningham v. McDonald, 2018 WL 6737418,* at \*2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018); *Rapid Capital Funding,* 2017 WL 3574451, at \*3 (all ruling similarly). In fact, this has been true notwithstanding the FCC's rebuttable "presumption" regarding the "residential" use of phone numbers purportedly listed on the National DNC Registry. *See, e.g., Vision Solar LLC*, 2020 WL 5632653, at \*3 (dismissing DNC claim where plaintiff did not allege the "cell phone line in question is his residential phone, as required" to state such a claim); *see also* Case No. 2:20-cv-02185 (E.D. Pa.), Dkt. 1, ¶17 (dismissed complaint in *Vision Solar*, alleging plaintiff's cell phone number was on the National DNC Registry); *Hicks*, 2020 WL 9261758, at \*5 ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of ***this*** case or the use of his phone.") (emphasis in original); *Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at \*2 (W.D. Va. July 25, 2018) (dismissing, noting the plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). Courts have also held that whether someone qualifies as a "residential subscriber" for a DNC claim generally depends on certain conditions, including for example that the subject

number "is the ***primary means of reaching the individual at their residence***—that is, there is ***no other landline or phone at their residence*** which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at \*6 (D. Mass. Feb. 3, 2022) (emphasis added).

As applied here, Plaintiff merely concludes, in <u>one</u> barebones paragraph, that he "utilizes this cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line." Dkt. 1, ¶ 17. These bald allegations are woefully insufficient to state a plausible TCPA DNC claim under the provisions Plaintiff invokes for several reasons. To begin, Plaintiff's bald conclusion that his number is a "residential telephone line" is not a fact, merely parrots the language of the statute, and thus need not be accepted as true by this Court under Rule 12(b)(6) when ruling here. *See Morgan*, 2018 WL 3580775, at \*2. Further, alleging that a phone number is used for "personal" calls likewise fails to plausibly allege "residential" use for purposes of a DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at \*5 (dismissing under Rule 12(b)(6) where plaintiff alleged his phone number was "not associated with a business and is for personal use"). Additionally, Plaintiff tellingly does not allege any facts suggesting that the phone number at issue here is the ***primary means*** of reaching him at his residence, let alone that there is ***no*** landline or other phone at his residence that is the primary means of reaching him there. *See, e.g., Mantha*, 2022 WL 325722, at \*6. Thus, under the vast weight of applicable authority on this point cited above, Plaintiff has not plausibly alleged he is a "residential telephone subscriber" within the meaning of the TCPA, which alone dooms Counts I, III and VII.[5]

<u>**Second**</u>, also as to Count I, the TCPA's National DNC Registry provision, on its face, expressly proscribes initiating a telephone solicitation to a "residential telephone subscriber ***who has registered his or her telephone number***" on the National Registry. 47 C.F.R. §64.1200(c)(2) (emphasis added). In this regard, courts have recognized that the plain language of this statutory text unambiguously requires pleading that the plaintiff actually "registered his or her [own] telephone number" on the National Registry to avoid dismissal. *See, e.g., Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at \*2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing Section 227(c), dismissing with prejudice under Rule 12(b)(6), and holding that this provision "does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national

---

[5] Though not addressed further below, CHW does not concede Plaintiff received a "telephone solicitation" within the meaning of the CHW, which is also required for a Section 227(c) claim. *See* 47 C.F.R. § 64.1200(f)(15)(ii) (a "telephone solicitation" does <u>not</u> include calls "[t]o any person with whom the caller has an established business relationship" even if their number is on the Registry). *See also id.*, § 64.1200(f)(6) (defining "established business relationship"). In this regard, the alleged texts purportedly notified Plaintiff that his "Choice Home Warranty [was] Expiring Soon." Dkt. 1, ¶ 13.

do-not-call registry" and that its "plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else"). As applied here, Plaintiff does <u>not</u> allege that he ***himself*** (and not some other party) registered the number upon which he allegedly received the at-issue texts on the Registry, as required—only that it "was registered on the National Do-Not-Call Registry for over 30 days prior to" the first alleged text. Dkt 1, ¶ 18. Applying the plain language of the statute,[6] this also warrants dismissal of Count I. *See, e.g., Rombough, supra.*

**Third**, Counts III and VII fail for the additional reason that there is no private cause of action for violations of the invoked "internal" DNC regulations. As courts have recognized, Section 64.1200(d) "was ... promulgated under § 227(d), a subsection of the TCPA which does not provide a private cause of action," as opposed to Section 227(c) which does. *Braver v. NorthStar Alarm Serv.,* *LLC,* 2019 WL 3208651, at *14-15 (W.D. Okla. July 16, 2019) (granting defendant's summary judgment motion on the 64.1200(d) claim); *accord Wilson v. PH Phase One Operations L.P.*, 422 F. Supp. 3d 971, 981-982 (D. Md. 2019) (dismissing claim under 64.1200(d) because regulation was promulgated under § 227(d), so no private right of action); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *4, 7 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th Cir. 2017) (ruling similarly); *Burdge v. Ass'n Health Care Mgmt. Inc.*, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (same). Because Section 64.1200(d) does not provide a private cause of action, therefore, Counts III and VII should be dismissed under Rule 12(b)(6) ***with prejudice.*** *See Wilson,* 422 F. Supp. 3d at 981-982.[7]

**Fourth**, assuming *arguendo* there were a private right of action under Section 64.1200(d), and there is not, Counts III and VII nevertheless fail on their merits. For starters, as to Count III, Plaintiff's allegations regarding CHW's purported failure to implement or follow adequate internal DNC policies are entirely conclusory, merely parrot the statutory text, thus do not comply with federal pleading standards (*see* Dkt. 1, ¶¶ 3, 22, 41, 72), which alone supports dismissal. *Laccinole v. Appriss, Inc.*, 453

---

[6] *See also Am. Bankers Ins. Grp. v. U.S.*, 408 F.3d 1328, 1332 (11th Cir. 2005) (interpreting a statute requires courts "to begin with the statutory text, and end there as well if the text is unambiguous."). This interpretation is also consistent with FCC rulings. *See, e.g., In re Rules and Regs. Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14039 (2003) (the FCC will only "presume wireless ***subscribers who <u>ask to be put</u>*** on the national do-not-call list to be 'residential subscribers.'") (emphasis added).

[7] CHW anticipates that Plaintiff will cite contrary opinions in response and argue that Section 64.1200(d) of the regulations falls under the purview of Section 227(c) of the TCPA, which does afford a private right of action. However, many of the cases holding there is such a private cause of action under Section 64.1200(d) rely primarily, if not exclusively, on the flawed ruling in *Charvat v. NMP*, 656 F.3d 440, 448 (6th Cir. 2011), or on cases relying on that faulty decision, where the Sixth Circuit merely "state[d]" that § 64.1200(d) was promulgated under § 227(c) rather than § 227(d) "without [any] analysis." *Braver*, 2019 WL 3208651, at *15. This Court should reject *Charvat* and its progeny.

F. Supp. 3d 499, 505-506 (D.R.I. 2020) (dismissing Section 64.1200(d) claim on this basis).

Moreover, courts recognizing such a cause of action have also held that the TCPA's "internal" DNC regulations do not prohibit "actually calling [or texting] an individual after the individual has requested placement on a[n] [internal] do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC,* 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009)). In other words, a violation of Section 64.1200(d) <u>only</u> stems from "the initiation of the phone call without having [first] implemented the minimum procedures" and not when an internal DNC request is not honored or for other reasons (*e.g.*, training employees, having or providing a copy of a written internal DNC policy, maintaining the internal DNC list, etc.). *Charvat v. GVN Michigan, Inc.,* 561 F.3d at 632. In this regard, Plaintiff bases Count III primarily, if not entirely, on his conclusory allegations that there were no "opt-out instructions" in the texts—such as an ability to reply with "Stop" even though that is not required by the TCPA's regulations (a phone number suffices). *See, e.g.,* Dkt. 1, ¶¶ 21-23. But these allegations do not support a plausible inference that that no internal policy *existed* or was not implemented prior to his receipt of the alleged texts here, and are insufficient to plead a claim under Section 64.1200(d) standing alone (if one even exists) as the authorities above show. Moreover, Plaintiff never alleges he asked for the texts to stop or he was denied a copy of the policy. In short, three alleged texts over 11 days says nothing about whether CHW had an internal DNC policy.

Additionally, Plaintiff's "failure-to-identify" claim in Count VIII under subsection 64.1200(d)<u>(4)</u> of the "internal" DNC regulations is not only improperly duplicative of his "internal" DNC policy claim in Count III,[8] but it is also completely devoid of merit. That is because CHW *is* adequately identified in the alleged text messages, such that he was enabled to make a DNC request to CHW if so he desired. Indeed, the purpose of the procedural requirement in subsection (d)(4) is to aid the ability to make a DNC request by appropriately identifying the caller. *See, e.g., Nece v. Quicken Loans, Inc.*, 2018 WL 1326885, at *9 n.9 (M.D. Fla. Mar. 15, 2018) (noting the purpose of the TCPA's identification requirements is to "secure a person's ability to identify and respond to a caller."). In furtherance of that goal, subsection 64.1200(d)(4) requires only "the name of the individual caller," the name "of the person or entity on whose behalf the call is being made," and "a telephone number or

---

[8] *See Charvat v. GVN Michigan, Inc.,* 561 F.3d at 630 (holding that the TCPA limits statutory damages to one award <u>per call</u> and that plaintiffs "cannot collect statutory damages on a per-violation basis").

address at which the person or entity may be contacted."[9] Plainly, all of those items are present here.

As applied, the alleged texts <u>explicitly</u> reference "Choice Home Warranty" and provide a number for Plaintiff to call to make a DNC request, which he apparently did not utilize. *See* Dkt. 1, ¶ 13. In fact, CHW was so sufficiently identified that Plaintiff was certainly enabled to sue CHW in this case. For him to now assert he was somehow uninformed as to the caller's identity to make a DNC request (*id.*, ¶ 41) begs credulity. *See also Iqbal,* 556 U.S. at 679 (under 12(b)(6), the court may "draw on its judicial experience and common sense"). And because the purpose of 64.1200(d)(4) is to easily facilitate an opt-out request, the inclusion of a toll free number to contact CHW directly for a DNC request to be quickly honored undoubtedly fulfills the intended purpose of the regulation.[10] *See Nece*.

**B.      Count II Should Be Dismissed Under Rule 12(b)(6) Because Section 8(a) of the FTSA Is Facially Unconstitutional for Several Reasons.**

Initially, Count II fails because Section 8(a) is facially unconstitutional on multiple levels.

**1.      Section 8(a) Violates the Dormant Commerce Clause.**

"The Commerce Clause grants to Congress the power to regulate interstate and foreign commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (citing U.S. Const. art. I, § 8, cl. 3). "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). In considering whether a law violates the Commerce Clause, the Court must consider (1) whether the state law "directly regulates or discriminates against interstate commerce, or has the effect of favoring in-state economic interests," and (ii) whether the state law "unduly burden[s] interstate commerce." *Fla. Transp.,* 703 F.3d at 1243–44. "[A] state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Id*. at 332. Moreover, a state's power to enact legislation is limited and "[a]ny attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) (citations omitted). Thus, "[s]tatutes that have the practical effect of controlling conduct beyond the boundaries of the state [like the FTSA] are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech Sys., Inc. v.*

---

[9] The "individual caller" and the "person or entity on whose behalf the call is being made" can be (and often is) one and the same—meaning that only one person or entity would need to be identified. Thus, identifying "Choice Home Warranty" was certainly enough to comply with this subsection.

[10] There is no requirement in the TCPA's internal regulations (or elsewhere in the TCPA) to have an automated "STOP" mechanism in a text message, despite what Plaintiff suggests. *See* Dkt. 1, ¶ 21.

*McCollum*, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (citing *Healy*).

  *McCollum* is instructive. There, a Florida statute prohibiting persons from causing false caller ID information to be displayed to call recipients "had the practical effect of regulating commerce that occur[red] wholly outside the state of Florida" and thus violated the Commerce Clause because it "[wa]s impossible for [the callers] to determine whether the recipient of a call [wa]s in Florida" and "[t]he logical consequence of this impossibility [wa]s that [the callers] [we]re unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id.* at *8. Other courts have ruled similarly when striking down state calling statutes on this basis.[11]

  The same consequence follows from the FTSA, which defines "telephone solicitor" as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, ***doing business in this state***, who makes or causes to be made a telephonic sales call." Fla. Stat. § 501.059(1)(i) (emphasis added). "Doing business in this state" includes "businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida." *Id.* § (1)(e).[12] There is also a rebuttable presumption that a call "made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." *Id.* § (8)(d).

  Applying *McCollum* to Section 8(a), "the increased use of mobile phones and call forwarding" makes it impossible for callers to be certain that the party they are calling is not located in Florida. 2009 WL 10626585, at *2. For example, a business located in California might place a "telephonic sales call" using an "automated system" to a phone number with a New York area code, but the recipient may be located or reside in Florida. That business would be liable for violating the FTSA even if it had no way of determining the recipient's actual location or residence. *Id.* at *8. Similarly,

---

[11] *See, e.g., Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14-16 (W.D. Wash. Mar. 30, 2015) (declining to certify class under Washington statute for similar reasons); *SpoofCard, LLC v. Burgum*, 499 F. Supp. 3d 647, 656 (D.N.D. 2020) (finding state anti-spoofing calling statute violated the dormant Commerce Clause because it was impossible to determine the location of the recipient); *Re Tech Sys., Inc. v. Barbour*, 866 F. Supp. 2d 571, 577 (S.D. Miss. 2011), *aff'd sub nom.* 702 F.3d 232 (5th Cir. 2012) (striking similar state anti-spoofing law for similar reasons on this basis).

[12] Importantly, the phrase "doing business in this state" is used only to define the term "telephone solicitor." This suggests the legislature elected to limit the application of only ***some*** prohibitions in the FTSA to "telephone solicitors"—*i.e.,* only to businesses operating in Florida. *See, e.g.,* Fla. Stat. § 501.059(2) (requiring a telephone solicitor to identify him or herself); § 501.059(4) (prohibiting a telephone solicitor from making calls to phone numbers on the Do Not Call List). In contrast, the automated call provision in Section 8(a) expressly applies to a "person," not just a telephone solicitor—*i.e.,* no "person" may make or knowingly allow a telephonic sales call to be made through an automated system without the express written consent of the called party. Fla. Stat. § 501.059(8)(a). But "person" is not defined in the statute or otherwise expressly limited to those doing business in or located in Florida. Thus, on its face, Section 8(a) does not appear to be limited to calls made or received within the state, which underscores its extra-territorial reach and compounds the Commerce Clause violation.

because the FTSA presumes all calls to Florida area codes are made to Florida residents or individuals located in-state, businesses must presume <u>all</u> calls to Florida area codes are subject to the FTSA, even if the recipient might actually receive the call or even live in another state. Consequently, the FTSA makes it impossible for businesses to make sales calls to consumers anywhere in the country without risk of liability under this Florida statute, effectively requiring those businesses to comply with the FTSA for <u>all</u> such calls <u>everywhere</u>, which undoubtedly violates the dormant Commerce Clause.

In fact, the Florida legislature itself predicted this potential extra-territorial consequence when recently amending Section 8(a) as well, but did nothing to correct it. *See* Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 (hereafter "FIS") at 10, available at https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF (last visited Dec. 2, 2022) (citing *McCollum* and noting: "It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that has the practical effect of regulating commerce outside of Florida's borders."). Unfortunately, this prediction came true—the FTSA violates the dormant Commerce Clause, warranting dismissal of Count II. *See McCollum, supra*.

## 2.  Section 8(a) is Also Unconstitutionally Vague For Several Reasons.

The Fifth Amendment to the U.S. Constitution (applicable to the states vis-à-vis the Fourteenth Amendment) provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." *Johnson v. U.S.*, 576 U.S. 591, 595 (2015). This guarantee is violated when a law, like Section 8(a), is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Id.* (citation omitted).[13] "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012). As the Supreme Court aptly held, "[a] vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

In this regard, the FTSA prohibits telephonic sales calls made using "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[.]" Fla. Stat. § 501.059(8)(a). However, Section 8(a) does not define this critical phrase or the key words in it. Worse, the FTSA's statutory language and legislative history have used various terms to describe the type of technology regulated. For example, the legislative history uses the phrases "automated machine," "automated dialer," "automatic telephone dialing system" (which is the ***TCPA's*** terminology) and

---

[13] The due process guarantees of the Fourteenth Amendment are coextensive with those of Florida's. *See, e.g.*, *Bonavista Condo. Ass'n, Inc. v. Bystrom*, 520 So. 2d 84, 86 (Fla. 3d DCA 1988).

"autodialer" interchangeably and without consideration to possible different meanings, sometimes conflating them into a singular "technology." FIS at 1-2. Further, prior to the amendments, the FTSA used different phrases throughout, even in the same sections, to describe covered technology. *See* Fla. Stat. § 501.059(8)(a)-(b) (2018). As such, it is completely unclear what technology constitutes an "automated system," it is <u>impossible</u> for callers to know whether they are using equipment regulated by the FTSA or if they must comply with the FTSA, and they can only guess at their peril as to what dialers are illegal. Under the TCPA, businesses had to play this guessing game for years as courts were deeply split as to whether certain dialers were an ATDS—until the Supreme Court intervened.[14] Section 8(a) now unleashes the same uncertainty, it is open to inconsistent judicial interpretations and arbitrary enforcement, and its unmitigated existence threatens to chill protected speech.

Moreover, as noted above, it is unclear whether Section 8 applies to called parties who are just visiting Florida. On its face, it prohibits any "person"—not just people or businesses doing business in Florida—from making automated calls without first obtaining consent. Fla. Stat.§ 501.059(8)(a). The statutory text does not expressly limit its application to calls received by Florida residents or calls made by Florida businesses or those doing business in the state. *See* fn. 12, *supra*. Thus, foreign companies are left to guess whether they might be subject to the FTSA's steep statutory damages if they unwittingly call or text one of their customers vacationing in Florida, or they may have to avoid making such calls altogether (nationwide) given that their customers may be visiting Florida at any given time.

In sum, Section 8(a) is also unconstitutionally (and indeed hopelessly) vague for several reasons, which further supports dismissal of Count II of Plaintiff's Complaint in this case.

### 3.     Section 8(a) Is Also An Unconstitutional Free Speech Restriction.

> a)     *Section 8(a) employs a content-based restriction on speech and, therefore, is subject to "strict scrutiny" review.*

The First Amendment, also applicable to the States through the Fourteenth Amendment, prohibits enacting any laws "'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Section 8(a) violates this too. In this regard, the government generally cannot "restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). A law is "content-based" where "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163. This includes any laws

---

[14] Tellingly, other state autodialing laws provide definitions for covered technology, like the TCPA does. *E.g.,* N.Y. Gen. Bus. Law § 399-p(a); 815 ILCS 305/5(a); Wash. Rev. Code § 80.36.400(1)(a).

"singl[ing] out specific subject matter for differential treatment." *Id*. at 169. For example, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.*

The United States Supreme Court has already made clear that restrictions on telemarketing which discriminate based on the call's content (which is precisely what the FTSA does) puts those restrictions at risk of being unconstitutional. Indeed, in *Barr* for example, the government-backed debt exception to the "automatic telephone dialing system" ("ATDS") restrictions of the TCPA (*i.e.*, 47 U.S.C. § 227(b)(1)), which permitted automated calls to collect a government debt without consent where such calls would otherwise be unlawful, was deemed an unconstitutional content-based restriction on free speech that was not narrowly tailored to serve a compelling interest. 140 S.Ct. at 2346-47. The plurality held that a law that differentiates between calls based on whether the call's content is to collect a government debt "is about as content-based as it gets." *Id.*

Applying these core concepts here, Section 8(a) provides "a person may not make or knowingly allow ***a telephonic sales call*** to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (emphasis added). While the FTSA does not define what this "automated system" is, which itself is an unconstitutional defect warranting dismissal as discussed above, a "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services…." Fla. Stat. § 501.059(1)(j). Thus, on its face, whether a call violates Section 8(a) rests squarely on whether it is a "telephonic sales call" to a ***consumer about consumer*** (not commercial) ***goods or services***—*i.e.*, one <u>specific</u> type of call, caller and topic, to the exclusion of all others. As such, a debt collection call to a Florida consumer using an "automated system" without consent—which is not allowed under the TCPA's automated call restrictions after *Barr*—or an "automated" political call to a Florida consumer (among other topics) is perfectly legal under the FTSA on its face. Yet, a call for the purpose of selling a consumer good or service to that same person while using the same "automated system" without FTSA-proscribed consent is illegal. As in *Barr*, "that is about as content-based as it gets." 140 S.Ct. at 2346-47.

Moreover, ***all*** "[c]ontent-based laws—those that target speech based on its communicative content [like Section 8(a) does]—are ***presumptively*** unconstitutional" and, as such, are subject to "strict scrutiny" review and therefore "may be justified [under the First Amendment] only if the

13

government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (emphasis added). *See also Int'l Outdoor, Inc. v. City of Troy,* 974 F.3d 690, 703 (6th Cir. 2020) (holding the lesser "intermediate scrutiny" standard applies <u>only</u> to laws that are content <u>neutral</u> on their face; strict scrutiny still applies to <u>all</u> content-based restrictions) (applying *Reed*).

In this regard, well before the recent amendments to Section 8(a), similar state calling statutes were struck down by several other federal courts applying strict scrutiny. In 2015, the Fourth Circuit invalidated a South Carolina statute prohibiting "unsolicited consumer telephone calls"—the definition of which was closely analogous to the FTSA definition of "telephonic sales calls"—and political calls. *Cahaly v. Larosa,* 796 F.3d 399, 402 (4th Cir. 2015). Applying strict scrutiny, that court struck down that part of the statute on the basis it was not narrowly tailored and "suffers from underinclusiveness because it restricts two types of robocalls—political and consumer—but permits 'unlimited proliferation' of all other types." *Id.* at 406. In 2016, a district court applied strict scrutiny and struck down a similar Arkansas state calling statute prohibiting use of an autodialer to place calls offering goods or services on the grounds that the statute was underinclusive because "no limit [wa]s placed" on other types of unwanted calls "that also may intrude on residential privacy." *Gresham v. Rutledge,* 198 F. Supp. 3d 965, 972-73 (E.D. Ark. 2016) (reasoning that "[i]f the interests of privacy and safety warrant restriction of automated calls made for a commercial purpose …, they also warrant restriction of other types of automated calls"). Then, in 2019, the Ninth Circuit applied strict scrutiny when striking down another closely-analogous Montana automated call statute. *See Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1227-29 (9th Cir. 2019) (applying *Reed*). *See also Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, 553 F. Supp. 3d 1143, 1163 (S.D. Fla. 2021) (ruling strict scrutiny applied to a content-based speech restriction in a "commercial" statute). In sum, all these directly on-point authorities show Section 8(a) is a content-based restriction properly reviewed under "strict scrutiny."

        b)      *Section 8(a) cannot survive "strict scrutiny" review.*

To survive strict scrutiny review, the State bears the burden to "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). The State cannot meet its heavy burden here.

Indeed, omitted from the statute itself and its legislative history is ***any*** purpose or justification ***at all*** for limiting the application of Section 8(a) of the FTSA as it is. Rather, the legislative history reflects the Florida legislature's discussion of consumer complaints about ***unwanted calls in <u>general</u>,***

14

including calls made using an autodialer to play a recorded message and spoofed calls regardless of content, as well as unwanted telemarketing calls regardless of how they are made (*e.g.,* manual calls). However, the legislative history does not articulate the reason behind regulating ***only*** "telephonic sales calls"—rather than ***all*** calls made using an "automated system for the selection or dialing of telephone numbers"—to the exclusion of all other kinds of calls. *See* FIS at 2. Regardless, even if the Florida legislature identified a specific motivation behind limiting Section 8(a) as it did—such as concerns about protecting "consumer" privacy, preventing "automated" calls to "consumers" generally, or eliminating "unwanted" calls even if manual—the law is not narrowly tailored to serve any such interest. "A statute is narrowly tailored if it targets and eliminates ***no more than the <u>exact source of the 'evil' it seeks to remedy</u>.***" *Frisby v. Shultz,* 487 U.S. 474, 485 (1988) (emphasis added). But Section 8(a) is <u>not</u> focused on an "exact source of evil," and it is both underinclusive and overinclusive.

The Supreme Court has held that legislation that is "underinclusive" or leaves injuries to the government's purported interest unprohibited is not narrowly tailored. *Reed,* 576 U.S. at 171-72. Section 8(a) is underinclusive, and therefore not narrowly tailored, because it still permits many types of unwanted calls. For example, Section 8(a) does not limit any other category of unwanted automated calls (like political calls made during election season) and still permits unwanted "telephonic sales calls" that are not made with an "automated system for the selection or dialing of telephone numbers." Further, unlike the analogous provision of the TCPA, which prohibits "***<u>any</u>*** call" made using an ATDS other than emergency calls or with the prior express consent of the called party (*see* 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added)), the FTSA prohibits <u>only</u> automated "telephonic sales calls," which is defined and limited to include <u>only</u> calls to consumers about consumer goods or services. *See* Fla. Stat. § 501.059(1)(j). Yet, calls about <u>non</u>-consumer goods or services, or to <u>businesses</u> about consumer goods or services, utilizing the same "automated system" <u>are</u> permitted. In short, rather than prohibit all automated calls on <u>all</u> topics (except for emergency calls, which are indeed a "compelling state interest") like other statutes do, the FTSA specifically "singles out [telephonic sales calls about consumer goods or services] for differential treatment." *Reed,* 576 U.S. at 169. *See also Victory Processing,* 937 F.3d at 1229 (similar statute underinclusive where other unwanted calls not restricted).

Finally, in addition to its silence on restrictions for many types of unwanted automated calls (which makes it <u>under</u>inclusive), if Section 8(a) was actually motivated by consumer protection from unwanted calls, it is simultaneously <u>over</u>inclusive because it ***unnecessarily restricts calls consumers may have actually wanted or expected.*** For example, a consumer could contact a business about the

purchase of a consumer product and ask to be called back but not provide their "prior express written consent" within the meaning of the FTSA's definition of that term. *See* Fla. Stat. § 501.059(1)(g). The end result of this is that the consumer either does not receive a clearly desired call just because his or her consent did not meet the onerous requirements of the statute, or the business takes the risk of possibly violating the FTSA in using an "automated system" to call the consumer. Either way, these examples all show Section 8(a) is both under and overinclusive, and it does not survive strict scrutiny.

    *c)*   *Section 8(a) also cannot survive "intermediate scrutiny" review.*

   Though strict scrutiny applies, Section 8(a) does not survive intermediate scrutiny review, either. Under that standard, speech that is "neither misleading nor related to unlawful activity" may be restricted if there is (i) a "substantial" state interest, (ii) "the regulation directly advances the governmental interest asserted" and (iii) the regulation "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). The State bears the burden of meeting this standard. *See FF Cosms. FL, Inc. v. City of Miami Beach,* 866 F.3d 1290, 1299 (11th Cir. 2017). Again, the State cannot meet its burden here, either.

   As noted above, there is <u>nothing</u> in the FTSA's legislative history or the text of the statute itself suggesting the Florida legislature has articulated <u>any</u> particular interest, let alone a "substantial" interest, that the recent amendments to Section 8(a) were designed to address. In fact, there is nothing suggesting the legislature has proffered any reason for singling out and regulating only unwanted automated "telephonic sales calls" to a "consumer" about "consumer goods or services" as Section 8(a) now does, as opposed to ***all*** unwanted calls to ***any*** person on ***any*** topic. And even if there were some generalized interests in protecting consumers from unwanted automated calls, Section 8(a) is both under- and overinclusive in advancing them. Again, there are a variety of "unwanted" calls not covered by Section 8(a) (*e.g.,* debt collection calls, scam calls, non-sales calls, political calls, and non-consumer sales calls not fitting the definition of a "telephonic sales call") that can be made in automated fashion without any consent or recourse, and a whole host of "wanted" calls are covered when they should not be (*e.g.,* where the consumer provides oral consent but not "prior express written consent").

   Moreover, if the Florida legislature wanted to stop all unwanted automated calls of any kind, it could have accomplished that simply by mirroring the restrictions of the TCPA when it amended Section 8(a). Yet, that is not what Section 8(a) does. And there are <u>many</u> far less restrictive alternatives to the FTSA's restrictions—such as oral consent or providing exceptions for calls made in response to an inquiry by the consumer—that the TCPA and other state calling statutes account for and the FTSA

currently does not.[15] "By ignoring far less restrictive and precise means, it is likely that [the FTSA] burdens substantially more speech than necessary." *FF Cosms.*, 866 F.3d at 1301. In short, while strict scrutiny applies, the FTSA is an unconstitutional speech restriction no matter the level of heightened scrutiny applied, and thus Count II should be dismissed under Rule 12(b)(6) on this additional basis.

    d)  *Recent non-binding decisions on this issue do not help Plaintiff.*

   CHW anticipates that, in response to this Motion, Plaintiff will rely on at least three non-binding district court decisions (*Turizo*, *Pariseau*, and *Borges*) on the constitutionality of the FTSA, inviting this Court to forego its own <u>independent</u> analysis.[16] The Court should decline this invitation.

   For starters, these case have zero impact on Plaintiff's failure to plead facts suggesting use of an "automated system" under the FTSA (*see* pp. 18-20, *infra*), the many fatal flaws with his TCPA claims (*see* pp. 4-9, *supra*), or his lack of Article III standing (*see* p. 20, *infra*). Regardless of the FTSA's constitutionality, the <u>entire</u> Complaint is ripe for dismissal on those bases alone. Further, none of those courts even attempted to hazard a guess as to what "automated systems" are covered by the FTSA despite declaring Section 8(a) is not vague on that basis, nor do any of them discuss the other unconstitutionally vague aspects of the statute, discussed above (*see* p. 12, *supra*). Moreover, two of those decisions (*Pariseau* and *Borges*) do not address the dormant Commerce Clause argument CHW makes here (*see* pp. 9-11, *supra*), and they both rely heavily if not exclusively on the third decision (*Turizo*), which is inapposite and, respectfully, was wrongly-decided in a number of key respects.

   Indeed, in *Turizo*, the court's review was predominately preoccupied with the FTSA's preemption by the TCPA, which CHW does not argue in this Motion. *See* 2022 WL 2919260, at *6-8. Additionally, the court's analysis in *Turizo* is flawed for at least three critical reasons: (1) it incorrectly assumed that compliance with the FTSA was sufficient to avoid dormant Commerce Clause implications, which avoids the critical analysis of whether the FTSA unduly burdens calls made to individuals ***wholly outside of Florida*** (and it clearly does, and is unduly burdensome on interstate commerce regardless of whether the FTSA is followed);[17] (2) it incorrectly applied the intermediate

---

[15] In fact, recognizing the many constitutional infirmities in the current iteration, the Florida House introduced a bill that, although ultimately not passed, would have amended Section 8(a) to add some of those common exceptions that could have resolved some of the speech problems noted above. *See* <u>https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c3/PDF</u> at p. 2 (last visited Dec. 2, 2022).

[16] *See generally Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 2022 WL 2919260 (S.D. Fla. May 18, 2022); *Pariseau v. Built USA, LLC,* 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022); *Borges v. SmileDirectClub, LLC*, 2022 WL 4269564 (S.D. Fla. Sept. 15, 2022).

[17] *See also Healy*, 491 U.S. at 336 (the Commerce Clause is implicated where a statute applies to "commerce that takes place wholly outside of the State's borders" even if there is no in-state impact).

scrutiny test to evaluate the constitutionality of the FTSA, whereas ***strict scrutiny applies to <u>all</u> content-based burdens on speech, including commercial speech*** (*e.g.*, *Int'l Outdoor* and *Norwegian Cruise Line*, *supra*), and it did not identify any interest ("compelling" or "substantial") articulated ***by the State*** in limiting Section 8(a) to just calls to consumers about consumer goods and services, and improperly just took the ***plaintiff's*** word for it; and (3) it entirely sidestepped the vagueness issue by summarily concluding the dialer at issue fell into Section 8(a)'s purview based on ***how the <u>defendant</u> referred to it,*** not the actual characteristics of the device itself in relation to Section 8(a)'s terms. *See* 2022 WL 2919260, at *8-12. In short, this Court should not be persuaded by these flawed decisions.

### C.   <u>Count II Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to State a Plausible Claim For Relief Under Section 8(a) of the FTSA.</u>

Beyond its many constitutional failings, Plaintiff's FTSA claim in Count II should also be dismissed because Plaintiff fails to plead sufficient non-conclusory facts in support of such a claim.

As noted above, there is one directly on-point federal authority—the recent decision in *Davis v. Coast Dental Servs., LLC*—which is particularly instructive here and further dooms Count II to dismissal. There, the district court held that, "[t]o properly allege a violation of [Section 8(a)], a plaintiff must allege some facts making it plausible that the defendant used an automated dialing system as described by the statute." 2022 WL 4217141, at *2. Yet, the complaint in *Davis* merely alleged that, "'[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers." *Id.* Thus, dismissing the FTSA claim under Rule 12(b)(6), the court held that "[t]his allegation is conclusory and the Court need not accept it as true" and that "it is merely possible that [the defendant] violated the FTSA, but not plausible as the pleading standard requires." *Id.* (citing *Chaparro* and *Iqbal*).

Moreover, in the absence of binding state authority, "Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones." *Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So.2d 613, 615 (Fla. 3d DCA 2001) (citations omitted).[18] In this regard, courts in the Eleventh Circuit, including in this District, have widely held that baldly alleging use of an "automated telephone dialing system" ("ATDS" or "autodialer") and parroting the statute is not enough to state a TCPA claim or avoid dismissal under Rule 12(b)(6). *See, e.g., Turizo v. Jiffy Lube Int'l, Inc*., 2019 WL 4737696, at *3 (S.D. Fla. Sept. 27, 2019); *Padilla v. Whetstone Partners, LLC,* 2014 WL 3418490, at *2 (S.D. Fla. 2014) (ruling similarly); *Mesa v. Am. Express Educ. Assurance*

---

[18] It is "generally presume[d] that [state] courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *Bobo v. TVA.,* 855 F.3d 1294, 1304 (11th Cir. 2017).

*Co.*, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017). Such is true here for Plaintiff's Count II.

In this case, like in *Davis*, Plaintiff merely alleges—or, rather, baldly concludes— that "'[t]o transmit the above telephonic sales text message call [*sic*], Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the [putative] Class members' telephone numbers." Dkt. 1 ¶ 23. *See also id.* at ¶¶ 24, 35-37, 65-66 (similar conclusory allegations about the "Platform" or "automated system" supposedly used to send the alleged texts, parroting the statutory language and case law). Yet, Plaintiff alleges no ***factual*** basis for these conclusions. For example, Plaintiff alleges the "Platform" used to send the texts at issue "has an auto-reply function that results in the automatic transmission of texts" (*id.* ¶ 37)—meaning if the recipient responded to a text, an automatic reply is generated—but he does not ever allege that ***he*** actually responded to any texts or received any such a reply. Such naked and speculative allegations are insufficient to avoid dismissal.

Even worse, Plaintiff alleges that his number was "selected and dialed" from a ***pre-existing*** "list of numbers" (*id.* ¶ 35), which myriad courts have found does <u>not</u> support an inference that an ATDS was used in TCPA cases, recognizing that the touchstone of an "automated" call is the "'random nature of the automation device'" used to make the call or send the texts at issue. *Perrong v. MLA Int'l, Inc.,* 2021 WL 3036462, at *2 (M.D. Fla. July 2, 2021) (quoting *Camunas v. Nat'l Republican Senatorial Comm.,* 2021 WL 2144671, at *6 (E.D. Pa. May 26, 2021)) (denying default judgment where "random nature" of device not alleged); *see also Evans v. Ocwen Loan Servicing, LLC,* 2021 WL 7366534, at *3 (S.D. Fla. Oct. 21, 2021) (dismissing: "[i]f the Defendant placed phone calls at random or in sequence, the Plaintiffs would not have received multiple phone calls"); *Garry v. NewRez, LLC,* 2022 WL 1619592, at *7 (M.D. Fla. Mar. 7, 2022) (granting summary judgment, holding that "[p]hone systems that are capable of making telephone calls only to specific telephone numbers from dialing lists provided by consumers do not qualify as ATDS systems").

In all, Plaintiff's allegations regarding the use of an "automated system" for Count II fall far short of meeting federal pleading standards, as the *Davis* court recognized as to the FTSA, and as countless other courts in and beyond this Circuit have held when dismissing similarly-flawed TCPA ATDS claims. *See also Chaparro*, 693 F.3d at 1337 ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."). This Court should rule similarly.[19]

---

[19] Further, with Plaintiff's TCPA claims properly dismissed for the myriad reasons above and below, the Court should decline to exercise supplemental jurisdiction over Plaintiff's FTSA claims under 28 U.S.C. § 1367(c), just as Judge Bloom did in the *Grieben* case. *See* 2022 WL 4598649, at *6.

**D.      Counts III through VII Should Also Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction Due Plaintiff's Lack of Article III Standing.**

Counts III through VII should also be dismissed under Rule 12(b)(1) lack of standing. For starters, as to the substantive TCPA claims (III and VII), Plaintiff does not allege that he ever made a request to be put on CHW's internal DNC list and thus lacks Article III standing to bring a claim under Section 64.1200(d) of the TCPA's implementing regulations. *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–72 (11th Cir. 2019) (holding members of a putative class who did not ask to be placed on an internal do-not-call list lacked standing under 64.1200(d) and vacating certified class); *Grieben*, 2022 WL 4598649, at *3-5 (dismissing Section 64.1200(d) claim ***with prejudice*** on this basis under Rule 12(b)(1), citing *Cordoba*);[20] *Perrong,* 2021 WL 1387506, at *2 (dismissing on this basis, holding that "because [plaintiff] never [directed the defendants] not to call him [and therefore] did not satisfy the 'regulatory prerequisite' before he could bring a claim under Section 64.1200(d)(1)").

Further, as to Counts IV through VI, requests for certain relief—like injunctive relief—may also be dismissed under Rule 12(b)(1) where the plaintiff lacks Article III standing to seek it. *See, e.g., Elend*, 471 F.3d at 1205-12. As applied here, Plaintiff generally seeks injunctive relief for himself and the putative classes. *See* Dkt. 1, ¶¶ 5, 67, 75-97 & Prayer. Again, however, a plaintiff seeking injunctive relief in ***any*** federal case must allege a threat of ***future*** injury. *See Cone Corp.,* 921 F.2d at 1203–1204; *Eland*, 471 F.3d at 1207; *see also Schaevitz v. Braman Hyundai, Inc*., 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case on this basis where no threat of possible future injury alleged). Plaintiff does not allege any such threat of future injury here, as is indisputably required to demonstrate Article III standing for injunctive relief.[21] Additionally, "[i]njunctive relief is not a standalone cause of action." *N. Brevard Cnty. Hosp. Dist. v. Metrus Energy-Atlantis,* 2020 WL 10459467, at *4 (M.D. Fla. July 10, 2020). This further supports dismissal of Counts IV through VI here. *See Michael W. Kincaid DDS, Inc. v. Synchrony Fin.,* 2017 WL 2599224, at *5 (S.D. Ohio June 15, 2017) (dismissing injunctive relief counts in TCPA case on this basis).

**V.      CONCLUSION**

For all these reasons, the entire Complaint should be dismissed with prejudice.[22]

---

[20] *Cordoba* and *Grieben* do not analyze (let alone recognize) if such a private cause of action exists.

[21] Nor could Plaintiff credibly allege such a threat in any event, as he merely alleges receipt of three texts he received in August of 2022, about two months before he filed this lawsuit. *See* Dkt. 1, ¶ 13.

[22] Dismissal with prejudice is appropriate where "a more carefully drafted Complaint could not state a claim." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137 (11th Cir. 2019). Such is true in this case as no amendment could can the facial constitutional defects or Plaintiff's lack of standing.

DATED: December 2, 2022        Respectfully submitted,


**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: 305-374-0440

By: *s/ Yaniv Adar*
      Yaniv Adar, Esq.
      Florida Bar No. 63804
      Joshua A. Migdal, Esq.
      Florida Bar No. 19136
      yaniv@markmigdal.com
      josh@markmigdal.com
      eservice@markmigdal.com


*Counsel for Defendant CHW Group, Inc.*

## **CERTIFICIATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on December 2, 2022, which served same electronically upon all counsel of record.

*s/ Yaniv Adar*

Yaniv Adar, Esq.

Florida Bar No. 63804
